**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| AARON J. MADDOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 4:07-cv-089-SEB-WGH |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Aaron J. Maddox ("Maddox") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I.  Background**

Maddox applied for DIB on September 14, 2004, alleging an onset date of April 13, 2004. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on December 12, 2006. Maddox was present, accompanied by his attorney. Medical and other records were introduced into evidence. Maddox and a vocational expert testified. The ALJ denied Maddox's application on February 16, 2007. On April 27, 2007, the Appeals Council denied Maddox's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Maddox met the insured status requirements of the Act through December 31, 2008; (2) Maddox had not engaged in substantial gainful activity since April 13, 2004, the alleged onset date; (3) Maddox had a "severe" impairment consisting of chronic lumbar strain/myofascial pain; (4) Maddox did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Maddox had the following residual functional capacity ("RFC"): he is limited to exerting up to 15 pounds of force occasionally to lift and carry items, he should perform his job seated, and should have the option to alternate between sitting and standing briefly every 15-20 minutes to relieve pressure on his lower back, he should not crouch, crawl, kneel, or stoop more than necessary to do table or desk type work, and he should not work around hazards such as unprotected heights or unguarded moving machinery; (6) Maddox was unable to perform any past relevant work; (7) Maddox was born on September 22, 1971, was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date, he had a limited education and was able to communicate in English; (8) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Maddox is "not disabled," whether or not he had transferable job skills; and (9) considering Maddox's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Maddox could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Maddox had not been under a "disability" as defined in the Act from April 13, 2004, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Maddox had a "severe" impairment of chronic lumbar strain/myofascial pain but that he could perform a significant number of jobs in the national economy. Maddox argues that the ALJ's decision is not supported by substantial evidence.

Maddox's claim is that the ALJ failed to articulate if, and if so why, he rejected the opinion of Dr. Ollo that Maddox cannot do any bending or stooping.[1] In determining Maddox's RFC, the ALJ concluded that Maddox was limited to exerting up to 15 pounds of force occasionally to lift and carry items, he should perform his job seated, and should have the option to alternate between sitting and standing briefly every 15-20 minutes to relieve pressure on his lower back, he should not crouch, crawl, kneel, or stoop more than necessary to do table or desk type work, and he should not work around hazards such as unprotected heights or unguarded moving machinery. (R. at 16). The ALJ framed the hypothetical question to the vocational expert in essentially the same way, describing a person who could lift, carry, push or pull up to 15 pounds occasionally, a negligible amount frequently, such person should not crouch, crawl, kneel, or stoop more than is necessary to perform work at a table, desk, or at a cash register station, and should have a sit/stand option, typically sitting but with the option to stand every 15 to 20 minutes. (R. at 436). In response to this hypothetical the vocational expert opined that such a person would essentially be limited to sedentary work activity but that there were a significant number of jobs in the national economy, including inspectors and assemblers and others, that such person could perform. (R. at 434-37).

---

[1]Restrictions on some types of bending may have a significant impact on a person's ability to perform exertional requirements of various categories of jobs, while restrictions on other types of bending may bear little on a person's residual functional capacity ("RFC").  Social Security Regulation ("SSR") 83-14. "Stooping" is defined as "bending the body downward and forward by bending the spine at the waist." SSR 83-10, 83-14. For purposes here, Social Security regulations provide that a "*complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work."  SSR 96-9p. (emphasis in original).  With respect to other types of bending, a person would not need to crouch (bending the body downward and forward by bending both the legs and spine) or kneel (bending the legs alone)(SSR 85-15, 83-14), in order to perform substantially all of the exertional requirements of most sedentary jobs.  SSR 96-9p.

In making the RFC assessment, the ALJ gave "controlling weight" to the August 2004 opinion of Dr. Ollo because Dr. Ollo was a treating physician and because Dr. Ollo's opinion was consistent with the objective medical evidence in the file. (R. at 18, 304). The ALJ described Dr. Ollo's opinion as having limited Maddox to "lifting no more than 15 pounds, to being allowed to alternate between sitting and standing, and restricted his postural activities." (R. at 18). To be precise, Dr. Ollo stated that "based on his FCE, [Maddox] will be placed on restrictions to include alternate sit and stand. No lifting greater than 15 lbs. No squat, bend, stoop, or climb." (R. at 304). The issue presented in this case is whether by determining that Maddox "should not crouch, crawl, kneel, or stoop more than is necessary to perform work at a table, desk, or at a cash register station" the ALJ rejected without explanation Dr. Ollo's opinion that Maddox should do no squatting, bending, stooping or climbing.

The Commissioner argues that Dr. Ollo did not mean that Maddox could not bend or stoop at all and that the ALJ's RFC finding was materially consistent with Dr. Ollo's opinion as a whole and with Maddox's reported activities. Absent such a discussion from the ALJ, the court cannot accept this *ex post facto* rationale. Dr. Ollo clearly restricted Maddox to work that required "no" squatting, bending, stooping, twisting or climbing. He repeated this opinion in April, May, June, July and August 2004. (R. at 280, 285, 289, 293, 297, 304). The ALJ did not explain how he gave controlling weight to this opinion and yet opined that Maddox could crouch, crawl, kneel, or stoop to whatever extent necessary to perform work at a table, desk, or at a cash register station.

Maddox contends that if Dr. Ollo's restriction on bending and stooping had been incorporated into the hypothetical question posed to the vocational expert, the uncontroverted evidence showed that Maddox would have been found disabled. This is not necessarily true, however, and in fact, a reasonable argument can be made that even if such restrictions were adopted, the vocational expert would have concluded that there were a significant number of sedentary jobs that Maddox still could have performed. Notably, the Commissioner argues that the Dictionary of Occupational Titles ("DOT") shows that the restriction on bending and stooping would not render Maddox disabled. Those restrictions, however, were not discussed in sufficient detail *by the ALJ* for the court to make that determination based on the current record. The vocational expert did not specify how much bending or stooping might be required to perform any of the jobs discussed at the hearing, nor was there any evidence presented as to how much bending or stooping would be necessary to do table or desk type work. The court will not attempt to resolve these issues in the first instance because the court "cannot engage in [its] own analysis of whether [a claimant] is severely impaired as defined by the SSA regulations." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Rice v. Barnhart*, 384 F.3d at 369 ("we will not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner.") (internal quotation omitted); *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Consistent with the foregoing discussion, the court cannot trace the path of the ALJ's reasoning with respect to Maddox's ability to squat, bend, stoop, or climb and how that might effect Maddox's ability to perform work activities. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). On remand, the ALJ shall conduct further proceedings to consider and resolve these issues. At a minimum, the ALJ shall articulate (a) his opinion as to Maddox's ability to squat, bend, stoop, or climb, (b) on what evidence that opinion is based, and (c) whether Maddox can perform a significant number of jobs in the national economy when those abilities, and all other restrictions supported by substantial evidence, are taken into consideration.

### III.  Conclusion

For the reasons discussed in this Entry, the ALJ's finding that Maddox was not disabled is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  06/20/2008

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana